# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| PAUL COHN, | : | Case No. 1:19-cv-943 |
| Plaintiff, | : | Judge Timothy S. Black |
| vs. | : | |
| WESTERN & SOUTHERN FINANCIAL GROUP LONG TERM INCENTIVE AND RETENTION PLAN I, *et al.*, | : | |
| Defendants. | : | |

## ORDER COMPELLING DISCLOSURE OF SOME REDACTED DOCUMENTS

This civil case is before the Court to resolve a discovery dispute after an *in camera* review of Defendant's documents, currently redacted pursuant to a claim of attorney-client privilege, and Defendant's privilege logs. Also before the Court are the parties' letter statements on the issues and the parties' representations at an informal discovery conference held on April 26, 2021.

### I. BACKGROUND

Plaintiff Paul Cohn was employed by Fort Washington Investment Advisors, Inc.("FW"), a subsidiary of Western & Southern Financial Group ("W&S"), from 2006 to 2018. (Doc. 1 at ¶ 6). Cohn worked as an investor in the private equity secondary market. (*Id.* at ¶ 7). While employed at FW, Cohn participated in the Long Term Incentive and Retention Plan I ("LTIRP"). As a participant in the LTIRP, Cohn received yearly grants of "units" that carried a certain value, accumulating over time in an account.


(*Id*. at ¶ 10).

Participation in the LTIRP was based solely upon an employee's compensation—only employees in the top 5% of annual compensation were eligible to participate. (*Id*. at PAGEID# 286). The LTIRP documents include provisions by which LTIRP benefits could be forfeited and prior benefits recovered if employment ended. The terms of the 2014 LTIRP plan provided that benefits could be forfeited if a former employee "enters into a business or employment which is competitive with or similar to the business of the Company or any Affiliate." (*Id*. at ¶¶ 16–17).

By June 30, 2018, Cohn had received over $304,000 in payments of LTIRP benefits and his LTIRP account was valued at $589,572. (*Id*. at ¶ 18). After several work and compensation related disputes, Cohn left employment with FW in October 2018. (*Id.* at ¶¶ 19–27). In the spring of 2018, Plaintiff formed a corporation called "Tail End Managing Member I, LLC." Cohn contends that he did not compete with FW in any way. (*Id.* at ¶¶ 28–37).

On May 31, 2019, the day before his 2019 LTIRP payment was to be authorized, Cohn received a letter from Steve Hussey, W&S's Senior Vice President of Compensation and Benefits, stating that he was now competing with W&S, and therefore his entire LTIRP account had been forfeited. The letter also demanded repayment of the $316,846.57 that Cohn had already received. (Doc. 11 at PAGEID# 265–67, the "Initial Benefits Decision").

Cohn informed W&S of his intent to appeal and requested documents relevant to his claim. (*Id*. at PAGEID# 268–69). W&S provided Cohn with a copy of the LTIRP

documents, the summary plan description, annual statements for Cohn's performance unit account, and the benefits decision documents. (*Id.* at PAGEID# 273–388). Cohn responded on August 1, 2019 requesting additional documents beyond what had been provided by W&S. W&S refused to provide any additional documents. (*Id.* at PAGEID# 389–93).

In October 2019, W&S's Executive Committee denied Cohn's appeal. (*Id.* at PAGEID# 457–60). Cohn subsequently filed this suit. Cohn's lawsuit claims that he was deprived of a full and fair review of the W&S benefits decision as required by 29 U.S.C. § 1133 and 29 C.F.R. § 2560.503-1(h)(2) (Count One), and appeals the W&S October 7, 2019 Executive Committee Decision (Count Two). (Doc. 16 at ¶¶ 53–66).

Alleging a need for discovery, which is usually not available outside the administrative record in cases like the present one, Cohn filed a motion to compel. (Doc. 10). In November 2020, the Court granted Cohn's motion to compel, authorizing him to seek documents: 1) relevant to LTIRP's status as a top-hat plan; 2) that were relied upon in making the administrative decision and not included in the administrative record; and 3) relating to purported conflicts of interest or bias. (Doc. 17).

In the ensuing discovery exchange, the parties reached an impasse over a set of W&S emails over which W&S claimed attorney-client privilege. Per local rule, the parties requested an informal discovery conference with the Court. (*See* 04/20/21 notation order). At conference, W&S agreed to attempt to redact copies of the emails, where possible, rather than withhold them altogether. W&S also agreed to provide the Court and opposing counsel with a more detailed privilege log. (*See* 04/26/2021 notation order). At

the same conference, Plaintiff represented to the Court that, for the purposes of the resolving the present discovery dispute, Plaintiff would concede that the LTIRP is a top-hot plan.

The Court has now received the redacted emails, unredacted emails, and the revised privilege log. Thus, the issue is ripe for the Court's resolution.

## II.  STANDARD OF REVIEW

Rule 26 provides that a party may:

> [O]btain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

The burden of establishing a claim of privilege rests with the party asserting it. *United States v. Roxworthy*, 457 F.3d 590, 593 (6th Cir. 2006); *Glazer v. Chase Home Fin. LLC*, No. 1:09-CV-1262, 2015 WL 12733393, at *2 (N.D. Ohio June 15, 2015).  If a claim of privilege is challenged, the party asserting it must establish each element by competent evidence.  *See Cooey v. Strickland*, 269 F.R.D. 643, 649 (S.D. Ohio 2010); *Comtide Holdings, LLC v. Booth Creek Mgmt. Corp.*, No. 2:07-CV-1190, 2010 WL 4117552, at *5 (S.D. Ohio Oct. 19, 2010) (stating that a party must establish the factual predicate for a claim of privilege by "competent evidence").

4

Communications are not discoverable if protected by attorney-client privilege. The attorney-client privilege applies "[w]here legal advice of any kind is sought." *Reed v. Baxter*, 134 F.3d 351, 355 (6th Cir. 1998). "Fundamentally, legal advice involves the interpretation and application of legal principles to guide future conduct or to assess past conduct." *In re Cnty. of Erie*, 473 F.3d 413, 419 (2d Cir. 2007). When a communication involves both legal and non-legal matters, courts "consider whether the predominant purpose of the communication is to render or solicit legal advice." *Id.* at 420. This predominant purpose "should be assessed dynamically and in light of the advice being sought or rendered, as well as the relationship between advice that can be rendered only by consulting the legal authorities and advice that can be given by a non-lawyer." *Id.* at 420–21.

### III. ANALYSIS

The disputed emails are exchanged either between two or more in-house counsel or between in-house counsel and W&S executives. The emails generally discuss facts and procedure related to forfeiture of Cohn's LTIRP benefits and, after forfeiture, the administrative appeal. Having had a chance to review the privilege logs, Cohn makes no claim the privilege has been waived. Additionally, at conference, Cohn's counsel conceded that, for present purposes, the LTIRP is a top-hat plan. As a consequence, the fiduciary exception to attorney-client privilege is not before the Court. *See, e.g*, *Moss v. Unum Life Ins. Co.*, 495 F. App'x 583 (6th Cir. 2012). Thus, with no need to analyze claims of waiver or the fiduciary exception, the Court is left with the question of whether, in the first instance, the communications "were related to the request for legal advice."

5

*Graff v. Haverhill N. Coke Co.*, No. 1:09-CV-670, 2012 WL 5495514, at *12 (S.D. Ohio Nov. 13, 2012).

Cohn's primary contention is that the fact-finding leading up to forfeiture, the forfeiture itself, and appeals administration are not legal matters. They are "business" or "administrative" functions. Therefore, the communications about those topics are not privileged even if transmitted by attorneys.

W&S, on the other hand, argues that all emails regard legal advice. The emails, W&S contends, involve fact-gathering, the analysis of those facts, and legal ramifications. W&S also argues that the primary purpose of the communications was the rendering of legal advice, even if some of the emails also contain "business" concerns. Finally, W&S states the work-product doctrine extends over the email communications once the relationship became adversarial—according to W&S, that was no later than when W&S demanded repayment and finalized the forfeiture.

The Court cannot adopt Cohn's assertion that he is entitled to all emails that concern "fact-finding." Some of the emails discussing the "facts" of the case were clearly communicated for the direct purpose of getting legal advice. *See Upjohn Co. v. United States*, 449 U.S. 383, 390, (1981). For similar reasons, the Court must reject Cohn's argument that the attorney-client privilege cannot reach appeals administration and all information provided to the Executive Committee. Here, Cohn asserts a categorial distinction between legal concerns on the one hand and administrative-business ones on the other. As anticipated by other cases, though, such a clear distinction is not always possible. Legal and business issues are often "inextricably intertwined." *Carhartt, Inc. v.*

6

*Innovative Textiles, Inc.*, 333 F.R.D. 113, 117 (E.D. Mich. 2019). Upon review, this case presents as one where business and legal issues are indeed inseparable. Accordingly, the Court must determine, for any given email passage, the "predominant purpose of the communication." *Harrison v. Proctor & Gamble Distrib., LLC*, No. 1:15-CV-514, 2016 WL 11642223, at *1 (S.D. Ohio Nov. 10, 2016).

Before getting to the conclusions of its in camera review, the Court notes that it has provided new references to the redactions provided by W&S. Specifically, the Court has, on its own initiative, given a number to every redaction 1-88.[1] The Court will send both parties a copy of the redacted communications with each redaction numbered and annotated to clearly show which passages must be un-redacted and disclosed pursuant to this Order.

**A. Passages that must be unredacted and disclosed**

Some of the redacted email passages exchange very general information about Cohn's activities—where he lives and works. While these emails may regard factual predicates that help establish whether Cohn was competing, the content of the emails is not connected to legal advice in any discernible way. *See Burton v. Zwicker & Assocs., PSC*, No. CV 10-227-WOB-JGW, 2012 WL 12925675, at *2 (E.D. Ky. Jan. 9, 2012) ("There is nothing inherent in the emails demonstrating that legal advice was being sought."). In exchanging general information about an LTIRP participant, the senders and

---

[1] Because one "document" produced by W&S could contain several emails in a chain, it is difficult to clearly reference which redactions, as provided, warranted the privilege and which did not. Thus, the Court has numbered every individual redaction.

7

recipients of these emails could just as well be acting in the normal course of administering the LTIRP. *See, e.g.*, *Carhartt, Inc. v. Innovative Textiles, Inc.,* 333 F.R.D. 113, 117 (E.D. Mich. 2019). None of the emails described here, moreover, discuss whether Cohn is engaged in competitive activity.

The boilerplate, conclusory language of revised privilege log's fails to illuminate any higher claim to attorney-client privilege that is not evident from the emails themselves. *See Cooey*, 269 F.R.D. at 649 (S.D. Ohio 2010) ("The privilege log must be detailed enough to prove that the communications in question were in fact confidential communications relating to legal advice."). The log, for example, uses words like "analysis" to describe emails that recite the results of a null internet search.

The party asserting the privilege has the burden of proving it. *Roxworthy*, 457 F.3d at 593 (6th Cir. 2006). To overcome that burden in the context of a mixed legal-business transaction, like this one, W&S must demonstrate that the communication had the "predominant purpose" of obtaining or rendering legal advice. *Harrison*, No. 1:15-CV-514, 2016 WL 11642223, at *1 (S.D. Ohio Nov. 10, 2016). With regards to the emails discussed above, W&S does not carry that burden.

W&S also seeks partial protection under the attorney work-product doctrine for all communications after W&S demanded repayment of LTIRP benefits. The work-product doctrine protects "documents prepared by a lawyer in anticipation of litigation." *Tenn. Laborers Health & Welfare Fund v. Columbia/HCA Healthcare Corp. (In re Columbia/HCA Healthcare Corp. Billing Practices Litig.)*, 293 F.3d 289, 304 (6th Cir.2002). Having reviewed the emails, and assuming emails may deserve protection

8

under the attorney work-product doctrine under certain circumstances, the Court concludes none of the above-referenced emails was or could have been created in anticipation of litigation. For that reason, these redacted emails do not warrant protection under the attorney work-product doctrine.

Accordingly, the following redactions, as numbered by the Court in an annexed copy of the documents, must be unredacted and disclosed: 1, 2, 3, 7, 8, 10, 12, 14, 17, 19, 22, 24, 31, 35, 37, 42, 44, 50, 52, 54, 57, 58, 60, 62, 63 and 64.

### B. Passages that are privileged and may remain redacted

This Court's in camera review has convinced the Court the residual portion of emails—all those not ordered disclosed above—are subject to attorney-client privilege and may remain redacted. Some of these emails involve exchanges, prior to the forfeiture, wherein the communicators seek clarity on whether Cohn's activity was "competitive" by the terms of the LTIRP. The Court finds that such exchanges concern legal advice. The emails here have a clear and predominantly legal purpose: interpretation of language as applied to certain facts. *Harrison,* No. 1:15-CV-514, 2016 WL 11642223, at *1 (S.D. Ohio Nov. 10, 2016).

Neither the timing nor the alternative characterizations that could be placed on the subject matter put the emails outside the privilege. It is true these emails take place prior to forfeiture and involve the same communicators as those discussed in non-privileged email passages. But these communications directly seek the type of advice typically provided by a lawyer. *See In re Cnty. of Erie*, 473 F.3d 413, 419 (2d Cir. 2007). It makes no difference that the legal advice here regards "administrative" matters. *See Upjohn*, 449

9

U.S. at 389 (1981). The key inquiry, again, is the predominant purpose of the communications. *Harrison*, No. 1:15-CV-514, 2016 WL 11642223, at *1 (S.D. Ohio Nov. 10, 2016). For the emails in question, the predominant purpose is soliciting or providing legal advice. *Id.*

A final sub-set of emails, exchanged after W&S concludes Cohn was competing, are more clearly oriented around legal advice. These exchanges seek input and feedback regarding core attorney work, like document drafting. In other words, in these communications, various in-house counsel are functioning primarily in the same manner as would "private attorneys." *Cooey*, 269 F.R.D. 643, 651 (S.D. Ohio 2010). For that reason, these emails also fall under the protection of attorney-client privilege.

The Court need not reach the work-product doctrine claims for the communications it has found already protected under attorney-client privilege.

### IV.  CONCLUSION

Based upon the foregoing, W&S is **HEREBY ORDERED** to un-redact and disclose to Cohn the following redactions as numbered by the Court in the annexed copy of the communications: 1, 2, 3, 7, 8, 10, 12, 14, 17, 19, 22, 24, 31, 35, 37, 42, 44, 50, 52, 54, 57, 58, 60, 62, 63, and 64.

**IT IS SO ORDERED.**

Date:  August 18, 2021  *s/ Timothy S. Black*
Timothy S. Black
United States District Judge